1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN F. VERNACCHIO,

        Plaintiff,

    v.

RON DAVIS, et al.,

        Defendants.

Case No. 19-cv-07171-SI

**ORDER OF SERVICE**

Re: Dkt. No. 1

John Vernacchio, an inmate at San Quentin State Prison, filed this *pro se* civil rights action under 42 U.S.C. § 1983. His complaint is now before the court for review under 28 U.S.C. § 1915A.

**BACKGROUND**

The complaint alleges the following: On March 9, 2018, 65-year old John Vernacchio was removed from his prison job due to his age. Before he was removed from his job, he had worked without incident and consistently for 16 months. Vernacchio was removed from his job due to a policy or practice that prison officials have implemented that requires mandatory termination of employment when an inmate reaches 65 years of age. A committee was formed to terminate Vernacchio's employment; Vernacchio tried to explain that he was healthy and able to do the work, but the committee members said that it did not matter because they had been instructed to terminate his employment when he reached age 65.

Vernacchio alleges that the discriminatory termination of his prison job violated his right to equal protection of the law and amounted to intentional infliction of emotional distress. Vernacchio alleges that warden Ron Davis, the chief medical officer (John Doe # 1), and the health care warden (John Doe # 2) are liable because they are responsible for supervising and training, as well as the

United States District Court
Northern District of California

1    policy that caused Vernacchio to lose his job. Docket No. 1 at 11. He also alleges that Warden

2    Davis is "responsible for the polic[ies] and practice in the prison"; John Doe # 1 was "responsible

3    for drafting those health polic[ies]"; John Doe # 2 was "responsible for implementing the health

4    care polic[ies] and practices"; chief medical executive Dr. Tootle was "responsible for the health

5    care polic[ies] and practices; and acting chief medical executive Daniel Smith was responsible for

6    "following those health polic[ies]." *Id.* at 3-4.

7

8                                      **DISCUSSION**

9        A federal court must engage in a preliminary screening of any case in which a prisoner seeks

10   redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C.

11   § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims

12   which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek

13   monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b)(1),(2).

14   *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,

15   699 (9th Cir. 1990).

16        To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a

17   right secured by the Constitution or laws of the United States was violated and (2) that the violation

18   was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48

19   (1988).

20        "To state a § 1983 claim for violation of the Equal Protection Clause a plaintiff must show

21   that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon

22   membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir.

23   2005) (citation and internal quotation marks omitted). An equal protection claim based on age

24   discrimination is evaluated under the rational-basis test. *See Kimel v. Florida Board of Regents*,

25   528 U.S. 62, 83 (2000) ("States may discriminate on the basis of age without offending the

26   Fourteenth Amendment if the age classification in question is rationally related to a legitimate state

27   interest.")

28

1        Although the complaint does not specifically identify the Age Discrimination in
2  Employment Act (ADEA), 29 U.S.C. § 621 et. seq., that law also *might* provide a basis for
3  Vernacchio's age discrimination claim.   Inmates performing work assignments that include
4  compensation or training, or that resemble work release rather than forced labor, may be employees
5  entitled to protection under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§
6  621, et seq. *Cf. Aronsen v. Crown Zellerbach*, 662 F.2d 584, 589 & n.8 (9th Cir. 1981) (provisions
7  of Title VII and cases construing them may be used to interpret ADEA); *Baker v. McNeil Island*
8  *Corrections Ctr.,* 859 F.2d 124, 127-28 (9th Cir. 1988) (prisoner may be "employee" under Title
9  VII to bring discrimination action alleging he was denied prison job solely on basis of race); *accord*
10 *Moyo v. Gomez*,40 F.3d 982, 985 (9th Cir. 1994) (prison inmates can be employees under Title VII).
11 If the ADEA applies to the prisoner-plaintiff, it is the exclusive remedy because the ADEA is the
12 exclusive remedy in the Ninth Circuit for age discrimination in employment and precludes the
13 assertion of age discrimination in employment claims, even those seeking to vindicate constitutional
14 rights under § 1983.  *Ahlmeyer v. Nevada System of Higher Ed.,* 555 F.3d 1051, 1057 (9th Cir.
15 2009); *cf. Stilwell v. City of Williams*, 831 F.3d 1234, 1251 n.12 (9th Cir. 2016) (noting circuit split
16 on question of exclusivity of ADEA).  To maintain an age discrimination claim a plaintiff must
17 produce enough evidence to establish a prima facie case of discrimination.  *Messick v. Horizon*
18 *Industries, Inc.,* 62 F.3d 1227, 1229 (9th Cir. 1995).  The elements of a prima facie case are that
19 plaintiff: (1) was a member of the protected class (age 40 to 70); (2) was performing his job in a
20 satisfactory manner; (3) was discharged; and (4) was replaced by a younger employee. *Id.*

21       The complaint alleges that Vernacchio lost his prison job due to a prison policy or practice
22 that required termination of a prisoner's job when he reached age 65.  Liberally construed, the
23 complaint states a cognizable § 1983 claim for an equal protection violation and a cognizable claim
24 for an ADEA violation based on age discrimination.  Recovery may be had under only one of those
25 theories because they are mutually exclusive.  *See Ahlmeyer*, 555 F.3d at 1057.  However, it is
26 unnecessary – and impossible, given the lack of information about the prison job set-up -- to decide
27 at this point which of those two theories of relief best fits Vernacchio's age discrimination claim.
28 The parties may argue which theory applies to the facts of this case in their briefing on dispositive

3

1    motions.

2       The complaint adequately links defendants Ron Davis, John Doe # 1, John Doe # 2, Dr.

3 Tootle, and Daniel Smith to the age discrimination claims as these defendants allegedly were

4 responsible for drafting and/or implementing the practice or policy to terminate inmate employment

5 at age 65.

6       The defendants identified as John Doe # 1 and John Doe # 2 present a problem. Although

7 the use of Doe defendants is acceptable to withstand dismissal of the complaint at the initial review

8 stage, using Doe defendants creates its own problem: those persons cannot be served with process

9 until they are identified by their real names. The court will not stall this action while Vernacchio

10 tries to learn the true names of these two persons. Rather, Vernacchio must promptly take steps to

11 discover each Doe defendant's true name and provide that information to the court in an amendment

12 to his complaint so that the Doe defendants may be served with process. The burden remains on

13 Vernacchio; the court will not undertake to investigate the names and identities of unnamed

14 defendants. Vernacchio must provide the true name and identity of John Doe # 1 and John Doe # 2

15 within 90 days of the date of this order or they will be dismissed without prejudice to him filing

16 another action against them.

17       Lastly, Vernacchio's separate claim for intentional infliction of emotional distress is

18 dismissed because a prisoner may not allege a claim for mental injury when, as here, there has been

19 no physical injury. "No Federal civil action may be brought by a prisoner confined in a jail, prison

20 or other correctional facility, for mental or emotional injury suffered while in custody without a

21 prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of

22 Title 18)." 42 U.S.C. § 1997e(e). Section 1997e(e) applies only to the separate claim for mental or

23 emotional injury and does not require a showing of physical injury for all prisoner civil rights claims.

24 *See Robinson v. Page*, 170 F.3d 747, 748 (7th Cir. 1999); *see also Oliver v. Keller*, 289 F.3d 623,

25 630 (9th Cir. 2002) (§ 1997e(e) does not bar claims for compensatory damages premised on other

26 injuries sustained from alleged constitutional violations).

27

28

**CONCLUSION**

1.      Liberally construed, the complaint states cognizable claims against warden Ron Davis, John Doe # 1, John Doe # 2, chief medical executive Dr. E. Tootle, and acting chief medical executive Daniel A. Smith for a violation of Vernacchio's rights under the Equal Protection Clause of the Fourteenth Amendment and under the ADEA.  All other claims and defendants are dismissed.

2.      The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, and a copy of the complaint, and a copy of this order upon the following persons who apparently work at San Quentin State Prison:

> - warden Ron Davis
> - chief medical executive Dr. E. Tootle
> - acting chief medical executive Daniel A. Smith

3.      In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

a.      No later than **May 15, 2020**, defendants must file and serve a motion for summary judgment or other dispositive motion.  If defendants are of the opinion that this case cannot be resolved by summary judgment, defendants must so inform the Court prior to the date the motion is due.  If defendants file a motion for summary judgment, defendants must provide to plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012).

b.      Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon defendants no later than **June 12, 2020**.  Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

c.      If defendants wish to file a reply brief, the reply brief must be filed and served no later than **June 26, 2020**.

4.      Plaintiff is provided the following notices and warnings about the procedures for motions for summary judgment:

5

The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

If a defendant files a motion for summary judgment for failure to exhaust administrative remedies, he is seeking to have the case dismissed. As with other defense summary judgment motions, if a motion for summary judgment for failure to exhaust administrative remedies is granted, the plaintiff's case will be dismissed and there will be no trial.

5.     All communications by plaintiff with the court must be served on a defendant's counsel by mailing a true copy of the document to defendant's counsel. The court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, plaintiff may mail a true copy of the document directly to defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

6.     Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

7.     Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

8.      Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to this court for consideration in this case.

**IT IS SO ORDERED**.

Dated:  February 11, 2020

_____
SUSAN ILLSTON
United States District Judge